UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22076-CIV-ALTONAGA/Reid

YOLANDA LOPEZ,

      Plaintiff,

v.

CITY OF OPA-LOCKA, *et al.*,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, City of Opa-Locka, Johane Taylor, Gabriela Llanes, and Link Logistics's Joint Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 21], filed on July 26, 2024.[1,2] Plaintiff, Yolanda Lopez filed a Response [ECF No. 32]; to which Defendant filed a Reply [ECF No. 37]. The Court has considered the Amended Complaint [ECF No. 6], the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part.

## I. BACKGROUND

This case arises from an allegedly unlawful arrest that took place on October 1, 2022. (*See* Am. Compl. 2). At the time of the incident, Plaintiff was standing outside the Opa-Locka Flea Market, "minding her own business and attempting to pass out flyers[.]" (*Id.* ¶ 17 (alteration added)). On that day, Johane Taylor and Gabriela Llanes ("the Officers") were contracted with

---

[1] "Link Logistics" refers to GPT NW 42nd Avenue Owner II LLC and GPT NW 42nd Avenue Owner III LLC, both also known as Gramercy Property Trust and formerly known as Blackstone Real Estate Partners VIII. (*See* Amended Complaint [ECF No. 6] 1).

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Link Logistics to provide security services as police officers for the City of Opa-Locka ("the City"). (*See id.* 2, ¶¶ 13, 18).

Llanes allegedly harassed, detained, and arrested Plaintiff without probable cause. (*See id.* ¶¶ 19–21). Taylor then "arrived on the scene and physically assisted" Llanes (*id.* ¶ 23), at which point both Officers "tasered [Plaintiff] multiple times while she laid [sic] helpless on the floor and screaming for mercy" (*id.* ¶ 24 (alteration added)). Plaintiff was transported to the hospital for medical care and then to jail, although eventually "the charges against [her] were dismissed as having no merit." (*Id.* ¶ 29 (alteration added); *see also id.* ¶¶ 27–28).

Plaintiff's Amended Complaint alleges violations of state and federal law. Defendants move to dismiss the Amended Complaint, asserting it is a shotgun pleading and all counts either fail to state claims for relief or are barred by immunity. (*See generally* Mot.).

## II.  LEGAL STANDARDS

***Shotgun pleading.*** Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted; other alteration added; citation and quotation marks omitted). Federal Rule of Civil Procedure 10(b) further requires that a pleading "state its claims or defenses in numbered paragraphs, each limited as far as practicable[.]" Fed. R. Civ. P. 10(b) (alteration added).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). A shotgun pleading makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs.*

*of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).  Therefore, "shotgun pleadings are routinely condemned by the Eleventh Circuit." *Real Estate Mortg. Network, Inc. v. Cadrecha*, No. 11-cv-474, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)).

> ***Motion to dismiss.***  "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Twombly*, 550 U.S. at 570).  A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

### III.  DISCUSSION

The Amended Complaint contains 10 claims for relief.  (*See generally* Am. Compl.).  In Count I, Plaintiff alleges the Officers falsely arrested her, in violation of 42 U.S.C. section 1983, the Fourth Amendment, and the Fourteenth Amendment.  (*See id.* ¶¶ 30–38).  In Count II, Plaintiff alleges the Officers used excessive force against her, also in violation of section 1983 and the Fourth and Fourteenth Amendments.  (*See id.* ¶¶ 39–48).  In Counts III and IV, Plaintiff alleges

the Officers assaulted and battered her (*see id.* ¶¶ 49–55) and falsely imprisoned her (*see id.* ¶¶ 56–61).

In Count V, Plaintiff alleges the City violated her federal civil rights. (*See id.* ¶¶ 62–76). In Counts VI and VII, Plaintiff alleges the City is liable for the Officers' assault and battery and false imprisonment of her. (*See id.* ¶¶ 77–89). In Count VIII, Plaintiff alleges the City was negligent in training and supervising the Officers. (*See id.* ¶¶ 90–94). And in Counts IX and X, Plaintiff alleges Link Logistics is directly liable for negligent security (*see id.* ¶¶ 95–99) and vicariously liable for the Officers' conduct (*see id.* ¶¶ 100–106).

The Court first addresses Defendants' argument that the Amended Complaint is a shotgun pleading and then turns to the sufficiency of each challenged claim.

**A. Shotgun Pleading**

Defendants argue Plaintiff improperly combines claims: (1) against the Officers (*see* Mot. 9–10, 12); (2) involving different allegedly unconstitutional policies (*see id.* 17–18); (3) for assault and battery (*see id.* 22–23); and (4) for negligent training and supervision (*see id.* 23 n.8). While the Amended Complaint is not a model of clarity, it is not a shotgun pleading.

To begin, Federal Rule of Civil Procedure 10(b) only requires that "claim[s] founded on a separate transaction or occurrence . . . be stated in a separate count" if "doing so would promote clarity[.]" *Id.* (alterations added). Importantly, as the Eleventh Circuit has cautioned, "[m]ultiplicity does not always equate with clarity." *Weiland*, 792 F.3d at 1325 n.18 (alteration added) (explaining that "[a] complaint is not always required to contain a separate count for each constitutional provision that the same set of facts is claimed to violate" (alteration added)).

Parties should be careful not to conflate claims with theories. *See Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1246 (11th Cir. 2004) (explaining that courts sometimes use "the word

'claim'" as "potentially confusing" shorthand for "theories of liability"). After all, even when "it may well be preferable to plead different *theories* of recovery in separate counts, it is not required." *Id.* at 1247 (emphasis added; citation omitted); *see also* Fed. R. Civ. P. 8(d)(2) (permitting parties to "set out [two] or more statements of a claim . . . in a single count" (alterations added)). In the end, what matters is whether the pleading "give[s] the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323 (alteration added; footnote call number omitted).

With that, the Court turns to each category of claims challenged by Defendants as running afoul of the shotgun pleading proscription.

***The Officers.*** Defendants take issue with two aspects of Plaintiff's claims against the Officers. First, Defendants argue that in Counts I and II, Plaintiff relies only on "blanket[] and conclusory allegations against [the Officers]" and impermissibly commingles her claims against them. (Mot. 9–10 (alterations added)). Second, Defendants argue all claims should be dismissed because Plaintiff "fails to distinguish which capacity [—] individual, official, or both [—] [the Officers] are being sued under." (*Id.* 12 (alterations added)). Neither argument is convincing.

Beginning with the first argument, the Court is not persuaded Plaintiff fails to "specify[] each individual's actions for the alleged claims" or "specifically identify[] which, if any, of the Officers engaged in the alleged unlawful acts[.]" (*Id.* 10 (alterations added)). Plaintiff alleges Llanes baselessly harassed, detained, and arrested her. (*See* Am. Compl. ¶¶ 19, 21). Then, "Taylor arrived on the scene and physically assisted" Llanes. (*Id.* ¶ 23). Eventually, "Llanes *and* Taylor" also "tasered her multiple times[.]" (*Id.* ¶ 24 (alteration and emphasis added)).

It is clear what each Officer allegedly did; Plaintiff also alleges both Officers acted unlawfully. Any more specific questions regarding which Officer caused which injury are fact

questions Defendants may explore in discovery. *Cf. Wopshall v. Travelers Home & Marine Ins. Co.*, No. 18-14424-Civ, 2019 WL 5697986, at *1 (S.D. Fla. Nov. 4, 2019) ("Under Florida law, the fact-finder (jury) determines the percentage share of each tortfeasor's comparative fault.").[3]

Moreover, it is not impermissible to simultaneously plead claims against both Officers. Rule 10(b) requires separate counts where "each claim [is] founded on a separate transaction or occurrence[,]" *and* the use of separate counts "would promote clarity[.]" *Id.* (alterations added). "Accordingly, claims founded on the same transaction or occurrence may be [pleaded] together in the same count." *Duquesne v. City of Miami Beach*, No. 12-20575-Civ, 2012 WL 3061603, at *3 (S.D. Fla. July 26, 2012) (alteration added; citation omitted).

Here, Plaintiff's claims against the Officers are premised on the same occurrence. (*See* Am. Compl. ¶¶ 30–61). Because the facts of each claim "are part and parcel of the same transaction or occurrence . . . [i]t is not necessary for Plaintiff to further subdivide these counts[.]" *Duquesne*, 2012 WL 3061603, at *3 (alterations added) (declining to require separate counts where "the alleged deprivation of rights by [] three officers was part of the same transaction or occurrence" (alteration added)). This is especially true where Plaintiff "make[s] clear which allegations of fact support which claims for relief[,] and each [] Defendant is named with respect to each action taken." *Id.* (alterations added).

Turning to Defendants' second argument, the Court agrees that whether the Officers are being sued in their individual or official capacity "should [be] clarified at an earl[y] stage" of the litigation process. *Jones v. Barlow*, No. 19-cv-00114, 2020 WL 5797653, at *3 (M.D. Fla. Sept. 29, 2020) (alterations added). But clarification does not necessarily require an amended complaint.

---

[3] Similarly, Defendants' request that the Court strike references to punitive damages and pre-judgment interest (*see* Mot. 26) is premature. *Cf. Krauser v. Biohorizons, Inc.*, No. 10-80454-Civ, 2010 WL 3468481, at *5 n.9 (S.D. Fla. Sept. 1, 2010) (noting "that it is not appropriate at the motion to dismiss stage to sort out the type of damages that can be awarded" (collecting cases)).

"[P]laintiffs are not required to designate with specific words in the pleadings that they are bringing a claim against defendants in their individual or official capacities, or both." *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1047 (11th Cir. 2008) (alteration added; citation omitted). A plaintiff need only show "that the defendant received sufficient notice." *Id.* (quotation marks and citation omitted).

In her Response, Plaintiff clarifies that Counts I to IV are against the Officers in their individual capacity; Counts VI and VII seek relief against the City only. (*See* Resp. 5–6). Plaintiff's clarification is sufficiently early in the proceeding; a second amended pleading is not required. Regardless of whether Defendants were sufficiently on notice from the Amended Complaint, they are now aware of the nature of Plaintiff's claims against them. *See Young Apartments, Inc.*, 529 F.3d at 1047 (explaining that a court's "main concern . . . in determining whether a plaintiff is suing defendants in their official or individual capacity is to ensure the defendants in question receive sufficient notice" (alteration added)).[4]

***Unconstitutional Policies.*** Next, Defendants express frustration with the "array of multiple purported theories of liability" pleaded under section 1983 in Count V. (Mot. 17). Defendants also insist they "cannot decipher the specific manner or theory that Plaintiff is attempting to hold the City liable under[,]" accusing Plaintiff of taking a "'throw everything against the wall and see what sticks' approach[.]" (*Id.* (alterations added)). As will be explained, Count V is dismissed because Plaintiff has not identified the specific constitutional right that Defendants violated and because she fails to factually support her allegations that Defendants have certain policies, practices, and/or customs.

---

[4] Should Plaintiff wish to amend her complaint again, she would be well-advised to incorporate her clarification into the new pleading.

The Court notes, however, that it can discern the outline of Plaintiff's claim under section 1983. According to Plaintiff, Defendants have adopted a series of "*de facto* policies, practices, and/or customs" that "encouraged and/or motivated Llanes and Taylor" to violate her unspecified constitutional rights. (Am. Compl. ¶ 73). To the extent this "laundry list" of allegations makes it difficult "to formulate a comprehensive response[,]" this difficulty arises from the volume of the allegations and not their placement within a single count. (Mot. 17 (alteration added)).

If Plaintiff can correct the deficiencies in Count V — by identifying, with factual support, violations of specific constitutional rights — she will be permitted to include multiple policies, practices, and/or customs within the same count. Again, while it may be preferable to plead different theories of recovery in separate counts, it is not required. *See Hulsey*, 367 F.3d at 1247 (citation omitted). As eager as Defendants may be to defend against possibly a dozen nearly identical counts, the Court sees no need to require this outcome.

**Assault and Battery.** Defendants raise a similar objection to Counts III and VI, arguing that assault and battery claims cannot be combined into a single count. (*See* Mot. 22–23). Certainly, assault and battery are separate claims, and a court can require that they be pleaded separately. *See Robbins v. City of Miami Beach*, 769 F. Supp. 2d 1372, 1376 (S.D. Fla. 2011). But a court may also permit the combination of the claims into a single count where it "does not create any substantial confusion or prevent Defendants from understanding the claims against them or framing their responses." *Payrow v. Chronister*, No. 22-cv-520, 2022 WL 3646324, at *2 (M.D. Fla. Aug. 24, 2022) (collecting cases).

Here, where the assault and battery claims are based on identical facts, there is no reason to expect that Defendants will be better able to defend themselves simply because the claims are pleaded in separate counts. Re-pleader is unnecessary.

***Negligent Training and Supervision.*** Finally, Defendants object to Plaintiff combining her negligent training and supervision claims in Count VIII. (*See* Mot. 23 n.8). For the reasons stated below, Count VIII is dismissed on the merits. The Court does not find, however, that Count VIII improperly commingles claims. Negligent training and negligent supervision are simply different theories for the claim of negligence, *see Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1338 (S.D. Fla. 2012), and need not be pleaded separately, *see Hulsey*, 367 F.3d at 1247. Similarly, to the extent Plaintiff wishes to proceed under failure-to-train and failure-to-supervise theories of liability, these theories — which can also be combined into one count — contribute to a single claim under section 1983. *See Burgess v. Palm Beach Cnty.*, No. 23-cv-81265, 2023 WL 7410056, at *4 (S.D. Fla. Nov. 9, 2023) (citing *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)).

Having concluded the Amended Complaint is not a shotgun pleading, the Court turns to Defendants' arguments concerning each Count.

### B. Counts I to III

Defendants argue Counts II and III — alleging excessive force under section 1983 and assault and battery against the Officers, respectively — should be dismissed because they are "entirely subsumed into Plaintiff's false arrest claim" in Count I. (Mot. 11). Defendants also argue any Fourteenth Amendment claims should be dismissed. (*See id.* 10 n.3). Plaintiff explains that her claims arise separately from each other. (*See* Resp. 4–5). She also insists she has sufficiently stated facts that "shock[] the conscience[,]" satisfying the requirement "[f]or a Fourteenth Amendment substantive due process claim to survive a Rule 12(b)(6) motion to dismiss[.]" (*Id.* 9 (alterations added; quotation marks omitted; quoting *Knight v. Pugh*, 801 F. Supp. 2d 1235, 1240 (M.D. Ala. 2011))). The Court addresses each issue in turn.

***Subsumed Claims.***   The Eleventh Circuit has distinguished between "artificial" and "genuine" excessive force claims.  *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022) (quotation marks omitted).   In an artificial excessive force claim, "an officer's use of force is excessive only because an arrest was not supported by probable cause."  *Id.*  By contrast, "a genuine excessive force claim is not resolved by the existence of probable cause."  *Id.*  "Instead, it is a claim that — irrespective of an officer's probable cause to make an arrest — the officer used excessive force."  *Id.*

Only artificial excessive force claims are subsumed into false arrest claims.  *See id.* at 1180–81.  If "a false arrest claim and a genuine excessive force claim arise out of the same incident, the . . . claims must be analyzed independently."  *Id.* at 1181 (alteration added; quotation marks and citations omitted).   Similar principles apply to assault and battery claims.  *See Alvoid v. Sch. Dist. of Escambia Cnty.*, 582 F. Supp. 3d 1140, 1151–52 (N.D. Fla. 2021).

Plaintiff brings genuine excessive force, assault, and battery claims.  Plaintiff's allegations are not that the excessive force, assault, and battery arose *solely* because of the false arrest.  (*See* Am. Compl. ¶¶ 39–55).   Rather, Plaintiff alleges the Officers used "excessive force *while* executing [her] illegal arrest[.]"  (*Id.* ¶ 43 (alterations and emphasis added)).   Moreover, she alleges the Officers' *actions* during that arrest — not just the arrest itself — "violated [her] constitutional rights[.]"  (*Id.* ¶ 41 (alterations added)).

Similarly, Plaintiff alleges the Officers' actions put her in apprehension of a "harmful or offensive contact" (*id.* ¶ 51) and then ultimately caused such contact to occur (*see id.* ¶ 52).   She alleges this contact was made "in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  (*Id.* ¶ 54).

Counts II and III are not describing excessive force, assault, and battery *solely* because of a false arrest.  (*See id.* ¶¶ 39–55).  Accepting the allegations in Count II and III as true, Plaintiff may prevail on those claims, even if she ultimately does not prevail on Count I because the Officers had probable cause to arrest her.  Thus, Counts II and III arise independently and are not subsumed into Count I.  *See Richmond*, 47 F.4th at 1181.

*Fourteenth Amendment.*  As Defendants note, Counts I and II impermissibly attempt to bring claims under the Fourteenth Amendment.  (*See* Mot. 10 n.3; Reply 3).  Plaintiff contends she need only "allege sufficient facts to support a plausible claim that the defendant's conduct shocked the conscience" to state a Fourteenth Amendment claim.  (Resp. 9 (alteration adopted; quotation marks omitted; quoting *Knight*, 801 F. Supp. 2d at 1240)).  Not so.

Conduct that shocks the conscience can give rise to a Fourteenth Amendment claim in certain contexts, such as high-speed chases.  *See Knight*, 801 F. Supp. 2d at 1240–41.  This is because, in those contexts, no other constitutional amendment specifically applies.  *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (explaining that "[s]ubstantive due process analysis is [] inappropriate . . . if . . . respondents' claim is 'covered by' the Fourth Amendment" (alterations added)).  Where, as here, another amendment — the Fourth Amendment — applies, the Fourteenth Amendment does not.  *See id.* at 842–43; *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[*A*]*ll* claims that law enforcement officers have used excessive force — deadly or not in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment . . . rather than under a 'substantive due process' approach." (emphasis in original; alterations added)).[5]  Because the alleged conduct here occurred during an

---

[5] In *Muckle v. Robinson*, on which Plaintiff relies (*see* Resp. 9), the court expressly concluded that the Fourteenth Amendment applied because the plaintiff "was a detainee . . . at the time of the alleged use of force."  No. 12-cv-0061, 2013 WL 251113, at *5 (N.D. Ga. Jan. 23, 2013) (alteration added).  In that context, the Fourteenth Amendment — and not the Fourth Amendment — applied. *See id.*  Plaintiff's claim

arrest, Plaintiff may only proceed under the Fourth Amendment and not the Fourteenth Amendment.

### C. Counts III and IV

Next, Defendants argue Counts III and IV — asserting claims of assault and battery and false imprisonment against the Officers, respectively — are barred by statutory immunity because Plaintiff fails to adequately plead the Officers acted with actual malice. (*See* Mot. 14–15). The Court concludes the claim survives.

Under Florida law, state officers may not be held personally liable for torts unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). The first two exceptions — "in bad faith" and "with malicious purpose" — are equivalent to the standard for "actual malice[.]" *Coleman v. Hillsborough Cnty.*, 41 F.4th 1319, 1325 (11th Cir. 2022) (alteration added; quotation marks and citations omitted). Actual malice refers to actions taken with "ill will, hatred, spite, or an evil intent." *Id.* (quotation marks and citations omitted). The third exception — "wanton and willful disregard" — requires "conduct that is worse than gross negligence." *Id.* (quotation marks and citation omitted).

Defendants are correct that Plaintiff cannot show actual malice by simply restating the term's definition, as she has done here. (*See* Am. Compl. ¶¶ 54, 60); *Brivik v. Law*, 545 F. App'x 804, 807 (11th Cir. 2013) (rejecting a "conclusory and [] insufficient" allegation that the defendant "acted maliciously and in bad faith" (alteration added)). Should Plaintiff wish to continue asserting the Officers acted with actual malice, she must do more than provide a "[t]hreadbare recital[] of

---

does not appear to involve conduct occurring during a pre-trial detention. (*See generally* Am. Compl.). Nor do the facts she recites in her Response have any bearing on the facts of this case. (*See* Resp. 9–10 (describing "a defenseless, mentally ill man")).

the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678 (alterations added; citation omitted).

Nonetheless, the Court is persuaded Plaintiff's allegations are sufficient to create a question of fact as to whether the Officers acted with "wanton and willful disregard" — a question that must, at this stage, be resolved in Plaintiff's favor. *Coleman*, 41 F.4th at 1326 (explaining that a court should "analyze if each officer's actions created a fact question about whether he was entitled to immunity" (citation omitted)). In this context, "wanton" conduct is that which is engaged in "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property"; while "willful" conduct is done "intentionally, knowingly and purposely." *Id.* at 1325 (quotation marks and citations omitted). "Together those terms describe conduct much more reprehensible and unacceptable than mere intentional conduct." *Id.* (quotation marks and citation omitted).

Plaintiff alleges the Officers "tasered her multiple times while she laid [sic] helpless on the floor and screaming for mercy." (Am. Compl. ¶ 24). She "was simply minding her own business" before this occurred. (*Id.* ¶ 17). Construing these facts in her favor, it is possible the Officers acted with "wanton and willful disregard" for Plaintiff's safety by unnecessarily tasing her. *Cf. Thompson v. Douds*, 852 So. 2d 299, 309 (Fla. 2d DCA 2003) (denying summary judgment because factual questions regarding "the level of force" used by officers and the reasonableness of their actions created a fact question as to whether the officers acted with a wanton and willful disregard of human rights). The Court is thus satisfied Counts III and IV are not barred by statutory immunity.

### D.  Count V

Moving on, Defendants argue Count V — asserting various "[f]ederal [c]ivil [r]ights [v]iolations" against the City (Am. Compl. 10 (alterations added)) — must be dismissed because Plaintiff fails to state a claim under section 1983 (*see* Mot. 16–21).  Because Plaintiff cannot allege a violation of the Fourteenth Amendment and has not alleged a violation of the Fourth Amendment, Count V must be dismissed.  The Court explains.

In Count V, Plaintiff refers simultaneously to both the excessive use of force and unlawful search and seizure.  (*See* Am. Compl. ¶¶ 62–76).  Defendants argue "the crux of Plaintiff's claim(s) appear[] to travel under the Fourth Amendment" but acknowledge what they call her "passing[]" reference to the Fourteenth Amendment.  (Mot. 18 (alterations added; citing Am. Compl. ¶¶ 74–75)).  Plaintiff alleges a violation of her "rights under the Fourth and Fourteenth Amendments" (Am. Compl. ¶ 75), but she only identifies a specific violation of the Fourteenth Amendment (*see id.* ¶ 74).  Similarly, in her briefing, Plaintiff references both Amendments but only addresses her Fourteenth Amendment claim in detail.  (*See* Resp. 6–10).

Regardless of Plaintiff's intentions, the law is clear.  As explained, a claim that excessive force was used during an arrest, lawful or unlawful, arises under the Fourth Amendment and not the Fourteenth.  *See Gregory v. Miami-Dade Cnty.*, 86 F. Supp. 3d 1333, 1339 (S.D. Fla. 2014); *Willis v. City of Coral Springs*, No. 16-cv-60959, 2016 WL 3747611, at *5–6 (S.D. Fla. July 13, 2016) (collecting cases).  Similarly, a false arrest can give rise to a section 1983 claim when it violates the Fourth Amendment.  *See Jones v. Brown*, 649 F. App'x 889, 890 (11th Cir. 2016) (citing *Ortega v. Christian*, 85 F.3d 1521, 1525–26 (11th Cir. 1996)).  Thus, once again, Plaintiff's claims can proceed under the Fourth Amendment.  (*Cf.* Mot. 10 n.3 (noting that "Plaintiff's

Fourteenth Amendment claims are legally barred as [they] are analyzed appropriately under the Fourth Amendment" (alteration added))).

Yet, Plaintiff has not adequately pleaded a violation of the Fourth Amendment. "To impose section 1983 municipal liability, a plaintiff must show: '(1) that h[er] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Young v. Miami-Dade Cnty.*, No. 16-23852-Civ, 2020 WL 2110012, at *4 (S.D. Fla. Apr. 21, 2020) (alteration added; quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); other citation omitted)). In other words, "Plaintiff must identify the *specific constitutional right* violated and identify the custom or policy that constituted deliberate indifference *to that constitutional right*." *Id.* at *5 (emphasis in original).

While Plaintiff alleges a violation of "her Fourteenth Amendment substantive due process right to bodily integrity" (Am. Compl. ¶ 74), she makes no similar allegation detailing the violation of a specific Fourth Amendment right. All Plaintiff offers is a conclusory allegation that the City "violated [her] rights under the Fourth [] Amendment[.]" (*Id.* ¶ 75 (alterations added)). "The Fourth Amendment is a classic repository of constitutional rights." *Denson v. United States*, 574 F.3d 1318, 1338 (11th Cir. 2009). It is not the Court's role to sort through that repository for possible claims Plaintiff could bring. (*See* Am. Compl. ¶¶ 65–71); *Ray v. Adams & Assocs., Inc.*, 599 F. Supp. 3d 1250, 1259 (S.D. Fla. 2022) ("It is incumbent upon Plaintiff to clearly set forth her claims, as it is not the Court's responsibility to divine causes of action by implication."). Consequently, Count V is dismissed for failure to state a claim.

Moreover, as Defendants note, Count V contains "a laundry list" of customs and policies that Plaintiff alleges the City adopted. (Mot. 17; *see also* Am. Compl. ¶¶ 65–72). Yet, none of

these conclusory allegations is accompanied by factual allegations of any kind. Conclusory allegations devoid of any supporting facts are insufficient to state a claim. *See Hall v. Smith*, 170 F. App'x 105, 107–08 (11th Cir. 2006) (affirming the dismissal of a section 1983 claim where the plaintiff "alleged no factual support for his conclusory statement that the City had a policy or custom of grossly inadequate supervision and training of its employees"); *see also* Mot. 20 (noting that "the Amended Complaint does not cite to a single other incident similar to Plaintiff's incident").[6]   Unsurprisingly, courts in this District frequently reject similarly insufficient allegations.[7]   This, too, warrants dismissal of Count V.

---

[6] Plaintiff insists she alleges "extensive histories of wrongful illegal conduct of which the City was aware." (Resp. 11 (citing Am. Compl. ¶¶ 71–74)). This conclusory statement is also not supported by factual allegations.

[7] *See, e.g.*, *Smith v. City of Fort Pierce*, No. 18-cv-14147, 2018 WL 5787269, at *6 (S.D. Fla. Nov. 5, 2018) (rejecting allegations of "prior unconstitutional behavior" unaccompanied by "factual allegations about even a single prior incident" (citations omitted)); *Whittaker v. St. Lucie Cnty. Sch. Bd.*, No. 10-14172-Civ, 2011 WL 3424564, at *5 (S.D. Fla. Aug. 5, 2011) (rejecting a "bare assertion" of "a custom, pattern, or practice" as "insufficient to state a claim for municipal liability" (citation omitted)); *Rosario v. Miami-Dade Cnty.*, 490 F. Supp. 2d 1213, 1225 (S.D. Fla. 2007) (explaining that the plaintiffs "failed to allege any facts in support of their claim that [the challenged actions] constituted the customs, policies, and practices" of the municipal defendants (alteration added; quotation marks omitted)); *Reyes v. City of Miami Beach*, No. 07-22680-Civ, 2007 WL 4199606, at *5 (S.D. Fla. Nov. 26, 2007) (noting that "[t]he mere fact that [the plaintiffs] included the words 'official custom, course and policy' in their [c]omplaint cannot save their section 1983 claims" (alterations added; citation omitted)).

### E.  Counts VI and VII

Defendants next argue Plaintiff cannot state vicarious liability claims against the City in Counts VI and VII.  (*See* Mot. 21–22).  On this point, the parties' briefing is unfortunately unhelpful.  According to Defendants, Florida Statute section 768.28 "does not contemplate any vicarious liability" and "necessarily excludes vicarious liability claims[.]" (*Id.* 22 (alteration added)).  Plaintiff's only response is to argue — briefly and baselessly — that Defendants cannot advance inconsistent arguments.  (*See* Resp. 10 ("The Plaintiffs are [sic] entitled to plead in the alternative[;] the City is not entitled to defend in the alternative." (alteration added))).[8]

Nonetheless, Defendants fail to satisfy their "burden of establishing [their] entitlement to dismissal."  *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (alteration added; citations omitted) (noting that "Defendants . . . have not directed the Court to any legal authority in support of their oft-confusing arguments for dismissal" (alteration added)).  Defendants seemingly concede that section 768.28 permits some form of liability against the City; but they insist that liability is necessarily direct, rather than vicarious.  (*See* Mot. 22).[9]  This argument raises two questions: first, whether vicarious liability claims are permitted under section 768.28 at all; and second, if they are, what the scope of that liability is.

---

[8] This argument is easily disposed of.  Federal Rule of Civil Procedure 8(d) permits a "party" to "state as many separate . . . *defenses* as it has, regardless of consistency."  *Id.* (alteration and emphasis added)).

[9] According to Defendants, this distinction matters because direct liability is mutually exclusive, while vicarious liability is joint.  (*See* Mot. 22).  Although they insist this argument is not "merely sema[n]tic[,]" it is.  (*Id.* (alterations added)).  "In any given situation[,] either [an] agency can be held liable under Florida law, or the employee, but not both."  *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996) (alterations added).  But here, the claims in Counts VI and VII are only brought against the City, and there is no attempt to impose joint liability.  (*See* Am. Compl. ¶¶ 77–89).  To the extent Defendants are concerned about joint liability arising from the totality of the pleading, such issues can be resolved at a later stage of the litigation.  For now, just as Defendants are permitted to raise alternative defenses, Plaintiff can bring any number of alternative claims, even if they conflict with each other.  *See Glenn v. U.S. Postal Serv.*, 939 F.2d 1516, 1523 (11th Cir. 1991) ("Plaintiffs can, of course, assert different and even contradictory claims."); Fed. R. Civ. P. 8(d).

Beginning with the first question, Defendants argue broadly that vicarious liability is simply not permitted by section 768.28. (*See id.* 21–22). Despite Defendants' conclusory contention (*see id.* 21), the statute itself is silent on whether it imposes direct or vicarious liability, *see* Fla. Stat. § 768.28(9). Nor does case law foreclose vicarious liability. Defendants, without explanation, cite an out-of-context statement from *Rabideau v. State*, 409 So. 2d 1045 (Fla. 1982). (*See* Mot. 22). *Rabideau* does not support Defendants' argument.

In *Rabideau*, the Florida Supreme Court concluded section 768.28 did not impose liability on the government by way of the dangerous instrumentality doctrine. *See* 409 So. 2d at 1045. True, the court broadly stated, "there was clearly no legislative intent to hold the state vicariously liable by enactment of section 768.28." *Id.* But this statement arose within the confines of a discussion about the applicability of the dangerous instrumentality doctrine, a unique — and here irrelevant — form of vicarious liability. *See Rippy v. Shepard*, 80 So. 3d 305, 306 (Fla. 2012), *abrogated on other grounds by Askew v. Fla. Dep't of Child. & Fams.*, 385 So. 3d 1034, 1036 n.2 (Fla. 2024).[10]

Indeed, Defendants fail to mention that both Florida courts and federal courts have concluded that section 768.28 imposes vicarious liability on governmental employers. *See, e.g.*, *Taylor v. Sheriff, Pinellas Cnty.*, No. 23-10538, 2023 WL 8368843, at *2 (11th Cir. 2023) (explaining "Florida's law with respect to vicarious liability of a state agency . . . for the tortious actions of an officer or employee" (alteration added)); *Dunn v. City of Boynton Beach*, 192 F. Supp. 3d 1310, 1325 (S.D. Fla. 2016) ("[Section 768.28(9)(a)] provides for vicarious liability for torts of an agent of the state or any of its subdivisions." (alteration added; citation omitted));

---

[10] Similarly, in *Garcia v. City of Hollywood*, the other case Defendants cite (*see* Mot. 22), the court concluded only that section 768.28 "does not waive sovereign immunity under the dangerous instrumentality doctrine." 966 So. 2d 5, 6 (Fla. 4th DCA 2007) (citing *Rabideau*, 409 So. 2d at 1046).

*Carestio v. Sch. Bd. of Broward Cnty.*, 866 So. 2d 754, 755 (Fla. 4th DCA 2004) (explaining that section 768.28 "outlines a limitation on the State's vicarious liability *in certain circumstances*" (emphasis added)).[11]

The question thus becomes what the scope of that vicarious liability is. The answer: vicarious liability applies except where the agent's acts were "outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Dunn*, 192 F. Supp. 3d at 1325 (quoting Fla. Stat. § 768.28(9)(a)); *see also Green*, 951 So. 2d at 920 (explaining that Florida courts, when interpreting the scope of immunity under section 768.28, "distinguish[] actions by employees that are within the scope of their employment . . . from actions by employees that are outside the scope of their employment" (alterations added)); *Carestio*, 866 So. 2d at 756 (concluding there was a factual dispute as to whether immunity applied under section 768.28 where "the employees were acting within the scope of their authority").[12]

Here, Plaintiff alleges Defendants "acted intentionally *but not* in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or

---

[11] *See also Laster v. City of Tampa Police Dep't*, 575 F. App'x 869, 872 (11th Cir. 2014) (noting that "Florida state law allows for an entity such as the City to be held vicariously liable for the torts of its employees"); *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 n.18 (11th Cir. 1988) (stating that "Florida law allows a plaintiff to recover against a municipality for the tortious acts of its employees based upon *respondeat superior*"); *Fla. Dep't of Env't Prot. v. Green*, 951 So. 2d 918, 919 (Fla. 4th DCA 2007) (noting that section 768.28 "provides sovereign immunity to the State from vicarious liability *for certain torts* of its employees" (emphasis added)).

[12] *Rabideau* is in accord; in that case, the analysis ultimately turned not on the distinction between direct and vicarious liability but on whether the alleged conduct occurred within the employee's scope of employment. *See* 409 So. 2d at 1046. The court "approve[d] fully[,]" *id.* (alterations added), the lower court's holding "that the state was not liable under the section for injuries caused by a state employee operating a state vehicle *when the employee was acting outside the scope of his employment*[,]" *id.* at 1045 (alteration and emphasis added).

property" for purposes of Counts VI and VII.  (Am. Compl. ¶¶ 82 (emphasis added), 88 (same)).[13]

This is sufficient.  *See McGhee*, 679 So. 2d at 733 ("The fact that [an employee] may have

intentionally abused his office does not itself shield [his employer] from liability. . . . [T]he

question must be put to the fact-finder whether [the employee] acted in bad faith, with malicious

purpose, or in a manner exhibiting wanton or wil[l]ful disregard of human rights, safety, or

property." (alterations added; footnote call number omitted; citing Fla. Stat. § 768.28(9)(a))).

### F. Count VIII

Defendants challenge Count VIII on two fronts.  First, they argue Plaintiff's negligent

training claim implicates a discretionary function and is barred by sovereign immunity.  (*See* Mot.

23–24).  Second, they argue Plaintiff's negligent supervision claim is not adequately pleaded

because Plaintiff does not allege prior notice.  (*See id.* 24–25).  Plaintiff contends that Defendants'

arguments are contradicted by case law but creates significant confusion by changing her claim

from one under state law to one under section 1983.  (*See* Resp. 10–12).  The Court first addresses

the confusion resulting from Plaintiff's briefing.  It then considers Plaintiff's potential state law

claims and federal law claims in turn, concluding they must be dismissed.

In the Amended Complaint, Plaintiff indicates Count VIII is a claim for "Negligent

Training and/or Supervision[,]" brought against the City.  (Am. Compl. 14 (alteration added)).

She alleges the City had a duty; breached its duty; and, in breaching its duty, injured her.  (*See id.*

¶¶ 90–94).  This is in line with how one would allege negligence by a municipality under state

law.  *See Spadaro*, 855 F. Supp. 2d at 1338.  Defendants move for dismissal under the assumption

that Count VIII attempts to allege this state law claim.  (*See* Mot. 23–25).

---

[13] This allegation is in tension with Plaintiff's allegations elsewhere.  (*See* Am. Compl. ¶¶ 54, 60 (alleging Defendants "acted intentionally, in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property")).  Again, this tension is insufficient to warrant dismissal.  *See Glenn*, 939 F.2d at 1523; Fed. R. Civ. P. 8(d).

In her Response, rather than address Defendants' challenge to any state law claims, Plaintiff cites case law discussing failure-to-train and failure-to-supervise theories of liability under section 1983 — a federal law. (*See* Resp. 10–12). These theories operate under their own standards and requirements. *See Burgess*, 2023 WL 7410056, at *3–4 (explaining standards for failure-to-train and failure-to-supervise claims). Defendants, understandably, find this commingling of state and federal law "confusing[][.]" (Reply 7 (alterations added)).

Plaintiff's sudden redirection implicates two competing principles. On the one hand, "plaintiffs cannot amend a complaint through arguments made in opposition to a motion to dismiss." *Wright v. GreenSky, Inc.*, No. 20-cv-62441, 2021 WL 4989918, at *7 (S.D. Fla. Oct. 27, 2021) (collecting cases). On the other hand, "failure to plead the correct legal theory is not necessarily fatal to a plaintiff's claim when the defendant has sufficient and fair notice of the correct theory." *King v. Butts Cnty.*, 576 F. App'x 923, 931 (11th Cir. 2014) (collecting cases). The Court need not resolve this potential conflict because, no matter what theory Plaintiff proceeds under, she fails to state a claim.[14]

**State Law.** "Claims for negligent training are typically barred by sovereign immunity because a decision regarding how to train officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Hemmings v. Jenne*, No. 10-61126-Civ, 2010 WL 4005333, at *6 (S.D. Fla. Oct. 12, 2010) (alteration adopted; quotation marks and citation omitted); *see also Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262–63 (11th Cir. 2001) (explaining that, "even if a plaintiff has adequately alleged all of the elements of a negligence claim . . . immunity would still bar the claim if the challenged act were deemed to be governmentally 'discretionary' in nature" (alteration

---

[14] If Plaintiff files a second amended complaint and brings a similar claim, she must clarify whether she is proceeding under state or federal law.

added; citation omitted)); *Spadaro*, 855 F. Supp. 2d at 1339 (applying *Lewis* to negligent hiring and supervision claims involving municipal law enforcement).

Plaintiff does not respond at all to Defendants' argument that her claims implicate discretionary questions.  (*See* Mot. 23–24; *see generally* Resp.).  "When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned." *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) (collecting cases).  The Court thus concludes Plaintiff has abandoned any state law theories of recovery for negligent training and supervision.

*Federal Law.*  In her briefing, Plaintiff turns to section 1983.  Certainly, under "limited circumstances[,] a municipality can be liable [under section 1983] on the basis that it failed to properly train its employees." *Ratlieff v. City of Fort Lauderdale*, No. 22-cv-61029, 2023 WL 3750581, at *16 (S.D. Fla. June 1, 2023) (alterations added; quotation marks and citation omitted). One such circumstance arises where a municipality shows a "deliberate indifference" to "a widespread pattern of similar constitutional violations by untrained employees[.]" *Id.* (alteration added; quotation marks and citation omitted).

Here, however, Plaintiff has not pleaded the facts necessary to meet the "stringent standard of fault" for her claim. *Id.* (quotation marks omitted; citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).  Plaintiff alleges Defendants failed to properly train their employees regarding "the appropriate use of force . . . even after learning of a steady increase in the number of sustained excessive force allegations against Opa-Locka Police Department employees[.]" (Am. Compl. ¶ 92(d) (alterations added)).  She also advances a series of conclusory allegations regarding various policies she believes Defendants had.  (*See id.* ¶ 92).  Once again,

22

however, she does not support those allegations with the necessary factual allegations. *See Hall*, 170 F. App'x at 107–08.

In her briefing, Plaintiff insists her allegations are sufficient to survive a motion to dismiss, citing two cases where a court in this District rejected arguments about the insufficiency of a plaintiff's allegations.  (*See* Resp. 11 (citing *Clarke v. Phelan*, No. 16-25217-Civ, 2017 WL 4326522, at *5 (S.D. Fla. Sept. 28, 2017), and *Rivas v. Figueroa*, No. 11-23195-Civ, 2012 WL 1378161, at *4 (S.D. Fla. Apr. 20, 2012))).  Neither of the cases addressed allegations as threadbare as Plaintiff's.

In *Clarke*, the plaintiff alleged that the municipal defendant ignored "at least twenty (20) complaints of excessive force," including nine against the officer defendants.  2017 WL 4326522, at *5 (citation omitted).  After the municipal defendant challenged the sufficiency of these allegations, the court concluded there was no "heightened pleading standard" that would require the plaintiff to "allege additional specific factual details at [the motion-to-dismiss stage] with respect to the merits of the past complaints[.]"  *Id.* (alterations added; citation omitted).

Similarly, in *Rivas*, the plaintiffs "alleged five instances where . . . police officers unlawfully searched and/or seized individuals' cameras or camera-phones."  2012 WL 1378161, at *4 (alteration added).  The municipal defendant argued these allegations were insufficient because "the examples alleged [we]re not numerous enough, not similar enough, and did not occur before the [p]laintiffs' claims."  *Id.* (alterations added; citation omitted).  The court disagreed, noting that the Eleventh Circuit had affirmed a jury verdict based on only four past incidents of officer misconduct.  *See id.*

By contrast, Plaintiff does not allege even one incident that would support her otherwise vague allegations about various policies and practices — let alone a pattern of deliberate

indifference to a widespread pattern of constitutional violations.  (*See generally* Am. Compl.; *see also* Reply 8 (noting that Plaintiff has omitted "the most basic factual allegations necessary to maintain such claims")); *cf. Smith*, 2018 WL 5787269, at *6.  Without more, the Court cannot conclude — even construing the allegations in Plaintiff's favor — that Plaintiff has stated a claim of section 1983 liability for failure to train or supervise.

### G.  Counts IX and X

Finally, Defendants raise three challenges to Counts IX and X, asserting claims of negligent security and vicarious liability against Link Logistics, respectively.  First, Defendants argue Plaintiff cannot assert a vicarious liability claim against Link Logistics.  (*See* Mot. 27–29).  Second, they argue Plaintiff fails to state a claim in each Count.  (*See id.* 29–31).  Third, and finally, they argue these Counts name the wrong Defendants entirely.  (*See id.* 31–32).  According to Defendants, "GPT NW 42nd Avenue Owner II LLC c/o Gramercy Property Trust f/k/a Blackstone Real Estate Partners VIII k/n/a Link Logistics" and "GPT NW 42nd Avenue Owner III LLC c/o Gramercy Property Trust f/k/a/ Blackstone Real Estate Partners VIII k/n/a Link Logistics" are not proper parties.  (*See id.*).

Remarkably, as Defendants note (*see* Reply 8–10), Plaintiff does not address these arguments, or Counts, at all (*see generally* Resp.).  Because Plaintiff abandons her claims as to Counts IX and X, these Counts — and Defendants — are dismissed.  *GolTV, Inc.*, 277 F. Supp. 3d at 1311 n.7.[15]  Should Plaintiff wish to pursue them in an amended pleading, she would be well-advised to confer with Defendants about their concerns that she has named the wrong entities.  (*See* Resp. 31); *Cohen v. Burlington, Inc.*, No. 18-cv-81420, 2020 WL 1033349, at *6 n.8 (S.D. Fla.

---

[15] Defendants argue Plaintiff abandons many other claims and arguments.  (*See* Reply 4–8).  While Plaintiff does not always make winning arguments, the Court is satisfied she attempts to defend or otherwise preserve the other Counts of the Amended Complaint.  (*See generally* Resp.).

Mar. 3, 2020) (explaining that "corporations are legal entities that should sue and be sued in their corporate name, and the corporate name must be strictly used in pleadings" (quotation marks and citations omitted)).[16]

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss **[ECF No. 21]** is **GRANTED in part**.  Counts V, VIII, IX, and X are **DISMISSED without prejudice**.  Defendants GPT NW 42nd Avenue Owner II LLC c/o Gramercy Property Trust f/k/a Blackstone Real Estate Partners VIII k/n/a Link Logistics and GPT NW 42nd Avenue Owner III LLC c/o Gramercy Property Trust f/k/a/ Blackstone Real Estate Partners VIII k/n/a Link Logistics are **DISMISSED without prejudice**.  Plaintiff has up to and including **September 30, 2024** to file an amended complaint or advise she is proceeding with the present pleading.

**DONE AND ORDERED** in Miami, Florida, this 17th day of September, 2024.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

---

[16] Because this Order arrives after the deadline set for Plaintiff to seek leave to amend (*see* Scheduling Order [ECF No. 29] 1), the Court provides Plaintiff a short extension of that deadline.  Defendants urge the Court to reject any request as futile and prejudicial.  (*See* Reply 10–11).  But these arguments are premature: no request to amend has been properly made.  *See Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1336–37 (11th Cir. 2024) (explaining that a motion, not a memorandum, is the only way a party may seek leave to amend). The Court thus will not address these arguments now.