UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22076-CIV-ALTONAGA/Reid

YOLANDA LOPEZ,

       Plaintiff,

v.

CITY OF OPA-LOCKA, *et al.*,

       Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, City of Opa-Locka's Motion to Dismiss Counts V and VIII of [Plaintiff, Yolanda Lopez's] Second Amended Complaint . . . [ECF No. 50], filed on October 15, 2024.  Plaintiff filed a Response [ECF No. 55], to which Defendant filed a Reply [ECF No. 56].  The Court has carefully considered the record, the parties' written submissions, and applicable law.  For the following reasons, the Motion is granted.

## I. BACKGROUND

This action arises from an allegedly unlawful arrest that took place on October 1, 2022. (*See* 2d Am. Compl. ("SAC") [ECF No. 43] 1–2).[1]  Plaintiff was standing outside the Opa-Locka Flea Market "minding her own business and attempting to pass out flyers[.]"  (*Id.* ¶ 18 (alteration added); *see also id.* ¶ 17).  On that day, Johane Taylor and Gabriela Llanes ("the Officers") were contracted by Link Logistics to provide security services as police officers for the City of Opa-Locka ("the City").  (*See id.* ¶¶ 10–11, 19).

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.  The Court would ordinarily cite to specific paragraph numbers in the Second Amended Complaint; however, the relevant paragraphs are unnumbered.  (*See* SAC 1–2).

Llanes harassed, detained, and arrested Plaintiff without probable cause. (*See id.* ¶¶ 20–23). Taylor then "arrived on the scene and physically assisted" Llanes (*id.* ¶ 24), at which point the Officers "assault[ed]" and "tasered [Plaintiff] multiple times while she laid [sic] helpless on the floor and screaming for mercy" (*id.* ¶ 25 (alterations added)). Plaintiff was later transported to the hospital for medical care and then to jail (*see id.* ¶¶ 28–29), although eventually "the charges against [her] were dismissed as having no merit" (*id.* ¶ 30 (alteration added)).

On May 30, 2024, Plaintiff initiated this action against the City, Taylor, and Llanes, bringing claims under 42 U.S.C. section 1983 and state law against the Officers for false arrest, excessive force, assault and battery, and false imprisonment; and against the City for civil rights violations, assault and battery, false imprisonment, and negligent training and supervision of its police force. (*See generally* Compl. [ECF No. 1]). On June 19, 2024, Plaintiff filed an Amended Complaint [ECF No. 6] adding Link Logistics as a defendant and asserting claims against it for negligent security and vicarious liability. (*See* Am. Compl. ¶¶ 95–106). Defendants followed with a Joint Motion to Dismiss [ECF No. 21] the Amended Complaint, which the Court partially granted, dismissing all claims against the City. (*See* Sept. 17, 2024 Order [ECF No. 40] 14–25).[2] Plaintiff then filed the Second Amended Complaint. (*See, e.g.*, SAC 1 n.1).

The City now seeks dismissal of Counts V and VIII of the Second Amended Complaint. In Count V, Plaintiff brings a section 1983 claim against the City, alleging that its policy, practice, and custom of failing to discipline its police officers for the use of excessive force resulted in a

---

[2] In its September 17, 2024 Order, the Court dismissed Counts V and VIII for failing to state claims for relief. (*See* Sept. 17, 2024 Order 14–16, 20–24). Regarding Count V, the Court noted that the "laundry list of customs" that "Plaintiff alleged the City adopted [lacked] factual allegations of any kind." (*Id.* 15–16 (alteration added; citations and quotation marks omitted)). As for Count VIII, the Court found that Plaintiff "d[id] not allege even one incident that would support her otherwise vague allegations about various policies and practices — let alone a pattern of deliberate indifference to a widespread pattern of constitutional violations." (*Id.* 23–24 (alteration added; citations omitted)).

violation of "her Fourth Amendment right to bodily integrity and security from unreasonable searches and seizures," as well as "her First Amendment right to pass out flyers in a public area[.]" (*Id.* ¶ 79 (alteration added); *see also id.* ¶¶ 63–81). In Count VIII, Plaintiff asserts a separate section 1983 claim against the City, accusing it of failing to train and negligently hiring, retaining, supervising, and promoting its police officers, which she alleges culminated in her arrest. (*See id.* ¶¶ 96–97, 101).

## II. LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant[s]-unlawfully-harmed-me accusation." *Id.* (alterations added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

The City argues that the section 1983 claims — one based on a failure to discipline and the other on a failure to train and related negligence — should be dismissed because Plaintiff fails to allege sufficient facts to plausibly establish that a municipal policy or custom was the moving force behind her constitutional deprivations. (*See* Mot. 6; *see also id.* 9–10).

The two claims are analyzed under the same framework.  "[T]o adequately state a claim for municipal liability under [section] 1983, a plaintiff must plead (1) that [her] constitutional rights were violated; (2) the municipality had a 'custom or policy that constituted deliberate indifference to that constitutional right,' and (3) that policy or custom caused the violation." *Wade v. City of Miami Beach*, 565 F. Supp. 3d 1248, 1251 (S.D. Fla. 2021) (alterations added; quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).  Further, "to allege a 'custom or policy,' a plaintiff must plead either '[] an officially promulgated policy or [] an unofficial custom o[r] practice shown through the repeated acts of a final policymaker for the [city].'" *Id.* at 1251 (alterations added; quoting *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003)).  And "[t]o meet the 'deliberate indifference' standard, a plaintiff must allege that 'the municipality knew of a need to [discipline,] train[,] and/or supervise in a particular area and . . . made a deliberate choice not to take any action.'" *Id.* (alterations added; quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)).

***Count V.***  The parties dispute whether Plaintiff has sufficiently pled that at the time of the incident, the City had a policy or custom of failing to discipline officers who have engaged in excessive force and other misconduct, amounting to deliberate indifference to Plaintiff's First and Fourth Amendment rights.  (*See* Mot. 2–7; Resp. 1–3; Reply 2–3).  According to the City,  Plaintiff fails to cite to any other factually similar incident to the one alleged in this case, and she offers no factual allegations regarding any meritorious claim for prior constitutional violations asserted against the City.  (*See* Mot. 6; *see also* Reply 2–3).  Plaintiff insists that her pleading draws on a wealth of sources in support of her failure-to-discipline claim, including what she describes as factually analogous section 1983 lawsuits against the City.  (*See* Resp. 1–3).

4

In Count V, Plaintiff alleges that the City had a policy or custom "of concealing and/or suppressing officer misconduct" (SAC ¶ 67) and "of deficient and biased procedures for investigating complaints [of] excessive force and unlawful searches and seizures" (*id.* ¶ 68 (alteration added)) — all of which "encouraged and[] motivated Llanes and Taylor to engage in the . . . wrongful acts against [Plaintiff]" (*id.* ¶ 78 (alterations added)). To support these allegations, Plaintiff references various newspaper articles and prior section 1983 lawsuits against the City (*see id.* ¶¶ 75–77), as well as "hundreds of constitutional violations" committed by the City and its police force "against countless innocent civilians" (*id.* ¶ 77). These sources, Plaintiff asserts, illustrate how the City "ha[s] fertilized and tolerated an inordinate amount of" officer misconduct. (*Id.* ¶ 74 (alteration added)).

Plaintiff's new allegations still lack the factual support needed to substantiate her section 1983 claim and survive dismissal. For instance, Plaintiff cites a *Miami New Times* article from 2008, which states the City's police department "has been steadily deteriorating for 20 years" due to a shrinking force. (*Id.* ¶ 75). This adds little, if anything, to Plaintiff's claim regarding the 2022 incident. The article neither identifies an official municipal policy nor describes a custom, which "must be a 'widespread practice that is so permanent and well settled as to [have] the force of law.'" *Wade*, 565 F. Supp. 3d at 1251 (alteration adopted; other alteration added; quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)).

Again, to proceed, Plaintiff must "allege a 'pattern' of [constitutional violations,] including specific facts of numerous incidents[.]" *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018) (alterations added). Generalized criticisms of a police department's history or citations to "random acts or isolated incidents" will not suffice. *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

This critique applies equally to Plaintiff's reference to a 2012 *Miami New Times* article, which reports that one-fifth of the City's police force some 12 years ago had engaged in "at least one instance of potentially career-ending misconduct[.]" (SAC ¶ 76 (alteration added)). There is no indication these incidents bear any similarity to Plaintiff's case, that the behavior continued in 2022, or how the incidents might relate to the City's disciplinary practices in 2022. Likewise, the final newspaper article Plaintiff cites — a 2015 *Miami Herald* piece describing a history of harmful "customs, policies[,] and practices" within the City's Police Department — adds little weight to her claim, as she again fails to draw any meaningful connection to her own arrest in 2022. (*Id.* ¶ 76 (alteration added)).

Similarly, Plaintiff's nod to prior section 1983 lawsuits against the City, and the vague reference to "hundreds of constitutional violations," fail to move the dial. (*Id.* ¶ 77). Central to these contentions is an Excel spreadsheet that Plaintiff created, purporting to show "a small random sampling of a much larger universe of [section] 1983 lawsuits by third parties against the City for conduct similar or substantially similar to the types of claims . . . Plaintiff raises[.]" (*Id.* (alterations added); *see also* Resp., Ex. 1 ("Excel Sheet") [ECF No. 55-1]).[3] The Court disagrees with Plaintiff's interpretation of the Excel Sheet and, in any event, is unpersuaded by her argument.

A close look at the single-page Excel Sheet reveals its limitations. The 11 cases listed vary widely, ranging from allegations of malicious prosecution to racial discrimination, sexual harassment, and whistleblower retaliation. (*See generally* Excel Sheet). Of these, six were settled or voluntarily dismissed; two had section 1983 claims dismissed at the motion-to-dismiss stage; one did not survive summary judgment; one ended in a verdict for the City; and the last saw a

---

[3] Plaintiff "inadvertently omitted" the Excel Sheet as an attachment to the Second Amended Complaint. (Resp. 2). She included it with her Response (*see* Excel Sheet), and the City addressed it in its Reply (*see* Reply 2–3). Seeing no prejudice to the City, the Court considers the Excel Sheet for purposes of this Order.

section 1983 verdict against the City reversed on appeal. (*See id.*). These cases span over two decades, from 1998 to 2024, and allege violations across multiple constitutional rights, including the First, Fourth, Eighth, and Fourteenth Amendments. (*See id.*). This "small random sampling" — a title true to its scattered selection — fails to suggest a policy or custom of constitutional violations relevant to Plaintiff's claim.[4] (SAC ¶ 77).

*Count VIII.* The parties also dispute whether Plaintiff sufficiently pleads that the City had a policy or custom of failing to train and negligently hiring, retaining, supervising, and promoting its police officers such that the City can be found deliberately indifferent to Plaintiff's constitutional rights. (*See* Mot. 8–10; Resp. 3–4; Reply 3–4). Plaintiff alleges the City had a "[n]egligent hiring" custom because it failed to exercise due diligence when vetting candidates. (SAC ¶ 97 (alteration added)). Plaintiff also describes a pattern of inadequate training for new officers (*see id.* ¶¶ 110–115); that was compounded by "[n]egligent retention, supervision[,] and promotion" due to a lack of oversight and accountability within the Department (*id.* ¶ 98 (alterations added)). Plaintiff suggests this negligence led to the hiring and retention of Taylor — who was reportedly under investigation for violent crimes at the time of Plaintiff's arrest — and Llanes, culminating in the incident at the heart of this case. (*See id.* ¶¶ 99–102).

The City insists there are no allegations to establish that the City was deliberately indifferent to a known need to additionally supervise or train its officers in the use of force or

---

[4] In her Response, Plaintiff introduces two new cases, both reportedly involving section 1983 claims against the City, which she asserts bear factual similarities to her own arrest. (*See* Resp. 2–3). The cases are neither included in the Second Amended Complaint nor reflected in the Excel Sheet. "To the extent Plaintiff supplies new facts in [a] response to [a] motion to dismiss, these facts cannot be considered to defeat the motion to dismiss." *Redoak Commc'ns, Inc. v. Adm'r of Est. of Olsen*, No. 23-80008-Civ, 2024 WL 4602821, at *4 n.3 (S.D. Fla. Oct. 29, 2024) (alterations added; citations omitted). Even if the Court were to consider these cases — and accept Plaintiff's characterization of them — they would not move the needle, as "[i]n most cases, isolated incidents unrelated to a specific policy cannot give rise to municipal liability." *McKenna v. Clayton Cnty.*, 657 F. Supp. 221, 225 (N.D. Ga. 1987) (alteration added; citation omitted).

lawful seizures. (*See* Mot. 10 (alteration added); *see also* Reply 3–4). Undeterred, Plaintiff states that "[t]he factual allegations [are sufficient and] include that [the Officers] and their supervisors . . . had a history of misconduct, and that Taylor was under investigation . . . for multiple crimes of violence and was allowed to continue to engage and abuse the public." (Resp. 3 (alterations added; citation omitted)). Plaintiff also emphasizes that her claim describes the continually declining quality of the City's background investigations and training procedures, and how they deviate from nationwide professional and state-specific standards. (*See id.*). The claim in Count VIII suffers two fatal flaws: first, it fails to specify the constitutional right the City allegedly violated; second, it provides no factual basis to support Plaintiff's allegation that the City had a policy or custom amounting to deliberate indifference to her rights. (*See* SAC ¶¶ 95–116).

Plaintiff's failure-to-train claim in Count VIII fails to identify a single constitutional right, let alone allege a violation of one. (*See id.*); *see also Young v. Miami-Dade Cnty.*, No. 16-23852-Civ, 2020 WL 2110012, at *4–5 (S.D. Fla. Apr. 21, 2020) (finding that to state a section 1983 municipal liability claim, the plaintiff must identify the *specific constitutional right* violated and identify the custom or policy that constituted deliberate indifference *to that constitutional right*). It is not the Court's role to sift through the catalogue of constitutional rights for possible claims Plaintiff might be bringing. *See Ray v. Adams & Assocs., Inc.*, 599 F. Supp. 3d 1250, 1259 (S.D. Fla. 2022) ("It is incumbent upon Plaintiff to clearly set forth her claims, as it is not the Court's responsibility to divine causes of action by implication.").

In any event, as the City argues, the allegations in Count VIII do not "establish a valid section 1983 claim premised on a failure to train or supervise" because Plaintiff fails to plead deliberate indifference. (Mot. 8; *see also* Reply 4). "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train

and supervise" its employees. *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1323 (S.D. Fla. 2015) (alteration added; quotation marks omitted; quoting *Gold*, 151 F.3d at 1350).  Tellingly, Plaintiff does not plead notice at all (*see* SAC ¶¶ 95–116).  And her conclusory allegations about Taylor's unspecified violent crimes fall short of the mark; as do her broad, unsupported accusations of undisclosed misconduct by Llanes and these Officers' supervisors.  (*See id.* ¶¶ 99–101).  These allegations lack the factual specificity required to survive dismissal.  *See Hall v. Smith*, 170 F. App'x 105, 107–08 (11th Cir. 2006) (holding that "[v]ague and conclusory allegations will not support a claim under [section] 1983" (alterations added)).

Plaintiff does include a standalone section titled, "[Opa-Locka Police Department's] Decades of Custom, History, Pattern, and Practices of Negligent Hiring, Retention of Police Officers and Police Chiefs[,]" which seemingly applies to Count VIII.  (SAC 16 (alterations added); *see also id.* ¶¶ 103–16).  In this section, Plaintiff criticizes the Department's hiring and recruitment practices (*see id.* ¶¶ 103–105, 110–115) and alleges the City routinely disregarded "red flags" in applicants' histories, such as evidence of misconduct (*id.* ¶ 108).

These allegations, which at least attempt to identify municipal policies and customs (*see id.* ¶¶ 103–116), lack the factual specificity needed to connect Plaintiff's broad criticisms of the Police Department to the circumstances of her own arrest, *see City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("[A] city is not liable under [section] 1983 unless a municipal policy or custom is the moving force behind the constitutional violation." (alteration adopted; other alterations added; citation and quotation marks omitted)).  Conclusory references to "unfiltered misfits" (SAC ¶ 111) and general critiques of Department practices (*see id.* ¶¶ 103–116) are insufficient, *see Fuqua v. Hess*, No. 16-cv-1510, 2017 WL 192760, at *6 (N.D. Ala. Jan. 18, 2017) (finding that the complaint failed to "sufficiently allege that the [municipality] had notice of a need to train or

CASE NO. 24-22076-CIV-ALTONAGA/Reid

supervise based on a prior pattern of similar constitutional violations" that rises to the level of deliberate indifference to the plaintiff's rights (alteration added)).

Plaintiff's inability to cite even one factual scenario that is like her case dooms her failure-to-train claim. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (holding that "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of [a] failure to train" claim (alterations adopted; other alteration added; citation and quotation marks omitted)); *see also Ratlieff v. City of Fort Lauderdale*, No. 22-cv-61029, 2023 WL 3750581, at *17 (S.D. Fla. June 1, 2023) (emphasizing the "narrowness" of municipal liability for failure-to-train-claim under section 1983).

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, City of Opa-Locka's Motion to Dismiss Counts V and VIII of [Plaintiff's] Second Amended Complaint . . . **[ECF No. 50]** is **GRANTED**.

**DONE AND ORDERED** in Miami, Florida, this 2nd day of December, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

10